## Case No. 12,999.
### SMITH et al. v. ALLEN.
[2 Fish. Pat. Cas. 572.] [1]

Circuit Court, D. Massachusetts.  Oct., 1865.

PATENTS—APPLICATION—REISSUES—PRIORITY OF INVENTION.

1. Where the plaintiffs' application was much earlier than the defendant's, although their patent was subsequent to his, and the defendant, in his first application, did not in terms describe or claim the plaintiffs' invention, but deliberately disclaimed it; but afterward reissued his patent and procured a reissue identical with the plaintiffs', *held*, that these facts constituted a case against the defendant, which he was called upon to meet.

2. Priority of invention awarded to the patent granted to Smith and Wesson December 18, 1860, for improvement in revolvers, over that reissued to Ethan Allen February 4, 1862.

This was a bill in equity, filed to restrain the defendant [Ethan Allen] from infringing letters patent [No. 30,990], for "improvement in revolvers," granted to complainants [Horace Smith and Daniel Wesson] December 18, 1860. The defendant claimed under letters patent for a similar improvement, granted to himself July 3, 1860 [No. 28,951], and reissued February 4, 1862 [No. 1,268].

The claims of these several patents were as follows:

Patent of Smith and Wesson: "We claim, first, the combination of a revolving cylinder, having its chambers extending entirely through the block, with an unbroken recoil shield having a projection on its face, as described, for the purpose set forth. Second, the combination of the barrel, hinged to the lock plate with a spring catch b, arranged with end projections to grasp the barrel and plate, substantially as described, for the purpose as set forth."

Original patent of Ethan Allen: "Providing the recoil plate of revolving fire arms with a projection in the form of an inclined plane, so that the cylinder will be free to revolve at the first minute movement of the hammer, substantially in the manner and for the purpose set forth and described."

Reissued patent of Ethan Allen: "The combination of a revolving cylinder, having its chambers extending entirely through the block, and an unbroken recoil shield, having a projection on its face, as described and for the purpose set forth. Also, in the said combination, as described, the making of the said projection, on the recoil plate, in the form of an inclined plane, substantially as and for the purpose specified."

E. T. Hodges and E. W. Stoughton, for complainants.

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

J. E. Maynadier, Causten Browne, and B. R. Curtis, for defendant.

LOWELL, District Judge. In this case the parties hold patents for the same invention, and their specifications are identical—a state of things as novel, probably, as the flat projection on the recoil shield of revolving fire arms, which is the subject of the patents. This fact relieves the case of many difficulties of interpretation, and of mechanics, usually found in controversies of this nature, and leaves open only the question of priority of invention, and this only between the parties to this suit; no invention by any third party being alleged. The plaintiffs, after many experiments, and after making and selling pistols, arranged upon a principle, the identity of which with this invention is in dispute between the parties, certainly made the precise improvement now patented, in April or May, 1858, and applied for a patent in January, 1859, before which time they had completed all their tools and preparations for making and selling pistols, embodying the improvement. Their application was rejected because the invention was supposed to be covered by one of several patents granted to Rollin White in 1855. They afterward renewed their application, with some modifications of their specification, and the patent was granted in December, 1860.

The defendant first applied for his patent for a projection in the form of an inclined plane, in April, 1860, something more than fifteen months after the plaintiffs had first made application, but when his petition was rejected, and he was referred to the Rollin White patent, and to the plaintiffs' application, he promptly disclaimed the flat projection, which, indeed, he had not in terms described or claimed, and received his patent for the inclined projection some months before the plaintiffs received theirs for the flat form. He has since obtained a reissued patent identical with the plaintiffs'; and it is admitted that, in law, the defendant could not support a patent for the inclined form of projection, if the plaintiffs' invention was earlier.

These facts, the very considerable priority of the plaintiffs' application, the nature of the defendant's original specification, which did not describe or claim, in terms, the flat form of projection, and his deliberate disclaimer on oath of the flat form as not new, certainly make a case which the defendant is called upon to meet. He introduces his own testimony and that of his workman Huber, to show that in the autumn of 1857 a model pistol was made for the purpose of testing this kind of fire arm, that is, a pistol with chambers bored through the cylinder. It was manufactured, they say, by Huber after a wooden model made by the defendant, and, when nearly finished, was tried, and found not to revolve easily, and the defendant ordered Huber to file the

shield away, around the line marked by the cartridge, excepting in the line of fire. Huber says he did so file it, and found it to work well thereafter. The defendant did not try it again, but was satisfied with Huber's report, and gave the model to Mr. Prescott, then, or soon after, his foreman, to make tools by for manufacturing the pistols.

A good deal of doubt is thrown by the plaintiffs' rebutting evidence upon the alleged fact of Huber's making any such pistol at that time.

It is not contended that any other pistol of this kind was made until after the admitted date of the plaintiffs' invention. And we are disposed to consider the weight of the whole evidence, including the copy of the defendant's contemporaneous letter to Rollin White, to be that he was not ready to make and sell in the market any pistols of this general class until January, 1859. This tends to increase the doubt of the correctness of the date for the model pistol, because it makes a very long interval for the carrying a successful experiment into practice.

But there is still greater doubt whether the model pistol, whenever made, contained any such protuberance on the recoil shield as would fairly anticipate the plaintiffs' invention. Prescott, who took charge of it to make the tools by, observed nothing of the kind, nor did any one else. The pistol itself is not produced. Its non-appearance is accounted for by the allegation sworn to by all the witnesses, who are asked to explain that circumstance, that, after the tools were made, it was of no importance. But no tool was made to carry out this part of the model. The explanation, therefore, fails, because the model would still remain important in this part. Again, it is perfectly certain, and is now admitted, that many, and probably most, of the pistols first made by the defendant were not filed at all. The plaintiffs have produced four such, made by the defendant during the year 1859. The defendant has produced none that were filed. Many witnesses who were in a position to know, and who examined many of the pistols, and who worked on all parts of them, saw and heard nothing of such a filing as is now sought to be established; and the majority of all who knew of any filing, speak of it as a filing in different parts of the shield, wherever the cartridges happened to bind. And the weight of the evidence decidedly is, that the whole matter of filing was left to the judgment of the fitters or finishers, without any model, or any definite or uniform plan upon which it was to be done. And there is no evidence that the model pistol was retained, for any purpose, for a single day after the tools were made.

Again, when the defendant came to make the large sized pistols, in which the binding is much greater, as it was obvious that it would be, and this was after the plaintiffs' original application for a patent, he made the shields entirely flat, and three uncontradicted witnesses say that they saw him trying one of these larger pistols in August, 1859, and that it would not revolve; and a suggestion being made by one of the bystanders that it needed a raised part on the shield, he said that he could not do that, as he had a number made in the same way, that is, flat. Soon after this, the defendant invented his inclined projection, and proceeded to make a proper tool for cutting or milling it uniformly upon all his pistols, and to take out a patent for it. Upon the rejection above mentioned, he disclaimed the flat projection as not original with him. Now, upon this point the defendant's explanation is far from satisfactory. He says he signed what his solicitor sent him, which, no doubt, is true. But he does not say that he did not fully understand what he was doing. There is some intimation that he did not know who was supposed to have invented the flat projection. This is not very material; but he certainly had full means of knowledge, because he knew all about the White patent, and had had some negotiation about buying it, and he knew that the plaintiffs had in fact bought it. When he was referred by the commissioner of patents to the patent of White, and the application of the plaintiffs, he was put on an inquiry which he could easily satisfy, so far as he was not already informed. The pistols of the plaintiffs were in the market, and the solicitor, Mr. Cooper, whom the defendant then proceeded to employ, had been their solicitor in making their original application. We think, under these circumstances, he must be affected with the knowledge that the plaintiffs were the persons concerned. And his disclaimer is a very distinct admission that his discovery was not earlier than January, 1859, the date of the plaintiffs' rejected application.

Upon all the evidence, of which we have referred to only some of the more prominent points, we find, as matter of fact, that the plaintiffs' invention of the flat projection was first in time, and that they are entitled to our decree.

This view makes it unnecessary to decide whether the invention of the plaintiffs of tipping the cylinder of their pistols is identical in principle and mode of operation with that of the flat projection, and, if so, whether it is properly described and claimed in their patent.